LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ., NBN 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MSHINGES.COM,<br><br>             Debtor. | Case No. 24-15588-abl<br>Chapter 11<br><br>Date: June 25, 2025<br>Time: 1:30 p.m. |

**DEBTOR'S MOTION FOR RELIEF FROM ORDER GRANTING
MOTION FOR RELIEF FROM AUTOMATIC STAY**

      MSHinges.com, a Nevada corporation, d/b/a Aerospace Machine & Supply, as debtor and debtor in possession (the "Debtor"), respectfully submits its motion (the "Motion") requesting relief pursuant to Rule 59, made applicable herein pursuant to Bankruptcy Rule 9023, from the Court's *Order Granting Motion for Relief from Automatic Stay* (the "Stay Relief Order") [ECF No. 77]. The Court's Stay Relief Order incorporated its prior oral ruling on the matter made on the record on May 1, 2025 (the "Oral Decision") [ECF No. 79], which granted the *Motion for Relief from Automatic Stay, or Other Relief [2937 N. Lamb Blvd., Las Vegas, NV 89115]* (the "Stay Relief Motion") [ECF No. 56] filed by PMC Financial Services Group, LLC ("PMC"). The Debtor's Motion is made and based on the points and authorities herein, the papers and pleadings on file in this case, judicial notice of which are requested, and any arguments of counsel made at the hearings on the Motion.

## I. INTRODUCTION

The Court should first grant relief from its Stay Relief Order in favor of the Debtor because its failure or refusal to hold an evidentiary hearing on PMC's Stay Relief Motion was a manifest error of law, and thus relief is necessary to allow an evidentiary hearing on the matter to proceed to prevent manifest injustice.[1] The Debtor demanded an evidentiary hearing in its Stay Relief Opposition, and put into evidence via its Stay Relief Opposition and the Silva Declaration evidence of adequate protection in favor of PMC of not only $15,000 per month in post-petition adequate protection payments, but also additional Debtor and non-debtor Aircraft Hinge value included within PMC's collateral package. The foregoing was more than sufficient to establish that genuine disputes of material fact existed regarding whether PMC was adequately protected across its entire collateral package, including not just what the Debtor owned that served as PMC's collateral, but also Aircraft Hinge. Notwithstanding the foregoing, however, instead of holding an evidentiary hearing on this critical issue, the Court summarily granted stay relief in favor of PMC after only an initial hearing.

Second, the Court should also grant relief from its Stay Relief Order because, in so ruling on PMC's Stay Relief Motion, not only did the Court fail to explain why the $15,000 monthly adequate protection payments being paid to PMC, combined with all of the Debtor's other evidence of value, was inadequate, but also summarily disregarded without explanation the evidence of additional non-debtor collateral support provided by Aircraft Hinge and Mr. Silva for PMC's obligation, which provided further adequate protection in favor of PMC. Instead, the Court looked only to the Debtor's assets, which was an incomplete picture of PMC's entire collateral package, and resulted in its manifestly unjust ruling of granting stay relief that was contrary to applicable law directing that a court must consider all collateral for a loan in

---

[1] Pursuant to LR 9014.2(b), the Debtor consents to the entry of final orders or judgment by the bankruptcy judge regarding the matters at issue in this Motion. All undefined capitalized terms used herein shall have the same meanings as in the Debtor's opposition to the Stay Relief Motion (the "Stay Relief Opposition") [ECF No. 62], and the Debtor's accompanying declaration from Mr. Silva (the "Silva Declaration") [ECF No. 63] filed in support of the Stay Relief Opposition.

2

determining adequate protection within the context of stay relief, including both a debtor-borrower and the collateral of other non-debtors pledged for the loan.

The Debtor readily admitted in its Stay Relief Opposition that it is a Nevada-based contract manufacturer for its non-debtor affiliate, Aircraft Hinge, in California, and thus it itself as a standalone entity did not have receivables and instead received its funding from Aircraft Hinge, and that it was Aircraft Hinge that entered into contracts and took purchase orders and processed payments from customers. As such, judging whether PMC was adequately protected based on only the Debtor's assets, and without regard to the other non-debtor collateral, was an incomplete and unfair analysis of the issue. Further, the Debtor provided evidence that this is how these two related companies have always operated, and that this is also why PMC included both entities as obligors in its loan and security documents, not just the Debtor. Accordingly, it was incomplete and incorrect for the Court to focus on and decided the matter based on only the Debtor's collateral values only when considering PMC's interest and whether it was adequately protected. In this regard, the Debtor cited to numerous authorities directing courts to consider a movant-creditor's entire collateral package -- including both not only the Debtor's property, but also the property of any non-debtor borrowers (Aircraft Hinge and Mr. Silva) -- in deciding a request for stay relief, however, the Court failed or refused to do so, or to the extent it did, it did not explain why this was inadequate as and for adequate protection.

## II. STATEMENT OF FACTS

In its Oral Decision, the Court found that the PMC Loan was owed not only by the Debtor, but also by Aircraft Hinge and personally guaranteed by Mr. Silva. Oral Decision, p. 7, ll,. 10-18. The Court did not mention, however, the fact that not only was Aircraft Hinge obligated on the debt to PMC, but also that PMC was secured in substantially all of Aircraft Hinge's assets as well, thus providing further collateral support for the Loan. The Court then noted in its factual findings the amounts of the Debtor's assets and liabilities by reference to the Debtor's filed bankruptcy *Schedules*, id. pp. 10-11, and noted the Debtor's minimal cash on hand and no receivables as reflected in its filed *Monthly Operating Reports*. Id. pp. 11-12. In so doing,

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

however, the Court did not reference the Debtor's explanation why this was the case, as supported by the Silva Declaration, and that this was by design because the Debtor was essentially accost plus contract manufacturer for its affiliate, Aircraft Hinge, and that this is how the two companies had always operated given their common ownership.

As to Aircraft Hinge, the Court found that it was a non-debtor entity and that there was no evidence outside of the Silva Declaration to support the assertion that Aircraft Hinge had assets in the values claimed. Id. p. 12, ll. 4-14. The Court did not provide any explanation whatsoever for why or on what basis it was summarily rejecting out of hand Mr. Silva's testimony about the values of Aircraft Hinge's assets, and thus also why those assets did not provide further collateral support to PMC, and thus additional adequate protection for its Loan that should be considered in deciding the Stay Relief Motion. Accordingly, the Court decided the Stay Relief Motion on the basis of only the values of the Debtor's real and personal property alone, and without regard to either the assets of Aircraft Hinge or Mr. Silva, which was an incomplete record and entirely unfair.

Lastly, the Court found that although the "Debtor claims to have been making $15,000 monthly payments to PMC as adequate protection, but there is no adequate protection stipulation, nor is there any adequate protection order on the debtor's – on the docket in the debtor's case that fixed $15,000 per month as adequate protection or establishes that that sum is sufficient to afford PMC adequate protection in connection with its secured claim." Id. p. 12, ll. 15-21.

In its conclusions of law, the Court granted PMC's Stay Relief Motion for cause pursuant to § 362(d)(1) of the Bankruptcy Code, and thus held that it did not need to reach the question of whether stay relief was also appropriate pursuant to § 362(d)(2). Id. p. 22, ll, 18-22. Specifically, the Court concluded that PMC established cause to grant it stay relief pursuant to § 362(d)(1) based on looking only at the values of the Debtor's real and personal property in comparison to the debts at issue, including PMC's debt and the other debts senior to it. Id. pp. 17-20. By summarily dismissing the Silva Declaration's testimony on the issue, the Court ignored the fact

that PMC was also secured in Aircraft Hinge and had a personal guaranty from Mr. Silva, which were two non-debtor sources of collateral support that provided additional adequate protection. In other words, in ruling as it did, the Court did not consider PMC's entire collateral package, and in spite of the Debtor's specific argument on the matter and directing the Court to such authority in its Stay Relief Opposition. Stay Relief Opposition, pp. 12-13. Instead, the Court held that "I find that the debtor fails to demonstrate that relief from the automatic stay is unwarranted in the face of the history of this loan and the facts as I've summarized them." Id. p. 21. The Court offered no further detail or explanation in support for this summary conclusion.

The Court then also summarily determined, without ever explaining why, that terminating the automatic stay was the only appropriate remedy in this situation, and thus that no lesser remedy, such as requiring a larger monthly adequate protection payment than was already being made, requiring that a plan be confirmed within a certain time, and/or otherwise was appropriate -- could suffice and instead that only a terminating remedy of an outright grant of stay relief -- thus allowing PMC to foreclose on the Lamb Property, the main manufacturing facility, and all of the Debtor's personal property, thus effectively shutting the Debtor down, was the only appropriate remedy.

On May 6, 2025, the Court entered its written *Order Granting Motion for Relief from Stay* (the "Stay Relief Order") [ECF No. 77], which incorporated its prior Oral Decision therein by reference. This Motion timely followed 14 days later.

### III. LEGAL AUTHORITY

A.    **Standard of Decision**

A motion for relief from judgment pursuant to Rule 59(e) may be premised on any of the following grounds: (1) "necessary to correct manifest errors of law or fact upon which the judgment is based;" (2) "newly discovered or previously unavailable evidence;" (3) "if necessary to prevent manifest injustice;" and (4) "justified by an intervening change in controlling law." Rishor v. Ferguson, 822 F.3d 482, 491-92 (9th Cir. 2016) (citing Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011)); In re Walker, 332 B.R. 820, 827 (Bankr. D. Nev. 2005). "[A]

5

Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" Wood v. Ryan, 759 F.3d 1117, 1121 (9th Cir. 2014) (citing Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)).

Motions pursuant to Rule 59(e), "must provide a court with valid grounds for reconsideration by: (1) showing some valid reason why the court should reconsider its prior decision, and (2) setting forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." Frasure v. United States, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). "Mere dissatisfaction with the court's order, or belief that the court is wrong in its decision, is not grounds for reconsideration." Bird v. Recontrust Co., No. 3:100-cv-00649-RCJ-VPC, 2014 WL 3696703, at *1 (D. Nev. July 23, 2014) (citing Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981)). In offering grounds for reconsideration or amendment, the moving party may not use the motion as "an avenue to re-litigate the same issues and arguments upon which the court already has ruled." Brown v. Kinross Gold, U.S.A., 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).

A manifest error of fact or law must be "plain and indisputable" and "amount[ ] to a complete disregard of the controlling law or the credible evidence in the record." In re Oak Park Calabasas Condo. Ass'n, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (citation omitted). A "manifest injustice" is an error of the trial court that is "direct, obvious and observable." Id.; de Borja v. Razon, 340 F.R.D. 400 (D. Or. 2021). The court's decision must contain such "fundamental flaw" that if not corrected "would lead to a result that is both inequitable and not in line with applicable policy." In re Wahlin, No. 10-20479-TLM, 2011 WL 1063196, at *3 (Bankr. D. Idaho Mar. 21, 2011).

**B.    Application.**

    **1.    Introduction.**

In the case at hand, the Court should grant relief from its Stay Relief Order based on the first test (necessary to correct manifest errors of law or fact upon which the judgment is based), and the third test (necessary to prevent manifest injustice). Given the genuine disputes of

material facts at issue in PMC's Stay Relief Motion, and the Debtor's demand for an evidentiary hearing in its Stay Relief Opposition, the Court was required to hold an evidentiary hearing. The Court's refusal to conduct that hearing and instead rule summarily as it did after only an initial hearing is an error of law. Moreover, the Court's lack of any explanation for why it summarily disregarded the testimony in the Silva Declaration regarding the value of Aircraft Hinge's assets and why those non-debtor assets did not provide PMC with additional adequate protection, and why the case-terminating relief of an outright grant of stay relief, as opposed to a lesser remedy such as greater adequate protection payments, fails to justify such critical decisions, thus also evading potential appellate review.

### 2. **Evidentiary Hearing.**

Bankruptcy Rule 4001(a) provides that motions for relief from the automatic stay pursuant to § 362(d) are contested matters governed by Bankruptcy Rule 9014. Bankruptcy Rule 9014, in turn, provides in pertinent part as follows:

> (d) Taking Testimony on a Disputed Factual Issue. A witness's testimony on a disputed material factual issue must be taken in the same manner as testimony in an adversary proceeding.
>
> (e) Determining Whether a Hearing Will Be an Evidentiary Hearing. The court must provide procedures that allow parties--at a reasonable time before a scheduled hearing--to determine whether it will be an evidentiary hearing at which witnesses may testify.

Fed. R. Bankr. P. 9014(d) and (e).

An evidentiary hearing with oral testimony is generally appropriate when there are disputed material factual issues the court cannot readily determine from the record. Fed. R. Bankr. P. 9014, Adv. Comm. Notes, 2002 Amend. In particular, the Advisory Committee Notes provide the following guidance:

> Subdivision (d) is added to clarify that <u>if the motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held</u> at which testimony of witnesses is taken in the same manner as testimony is taken in an adversary proceeding or at a trial in a district court civil case. Rule 43(a),

> rather than Rule 43(e), F.R. Civ.P. would govern the evidentiary hearing on the factual dispute. Under Rule 9017, the Federal Rules of Evidence also apply in a contested matter. Nothing in the rule prohibits a court from resolving any matter that is submitted on affidavits by agreement of the parties.
>
> Subdivision (e). Local procedures for hearings and other court appearances in a contested matter vary from district to district. In some bankruptcy courts, an evidentiary hearing at which witnesses may testify usually is held at the first court appearance in the contested matter. In other courts, it is customary for the court to delay the evidentiary hearing on disputed factual issues until some time after the initial hearing date. In order to avoid unnecessary expense and inconvenience, it is important for attorneys to know whether they should bring witnesses to a court appearance. The purpose of the final sentence of this rule is to require that the court provide a mechanism that will enable attorneys to know at a reasonable time before a scheduled hearing whether it will be necessary for witnesses to appear in court on that particular date.

Id. (emphasis added).

Finally, complementing the foregoing, LR 4001 provides that LR 9014 applies to stay relief motions. LR 4001(e). LR 9014, in turn provides that:

> <u>The judge may deem the first date set for the hearing to be a status and scheduling hearing if the judge determines that further evidence must be taken to resolve a material factual dispute or if additional briefing is warranted</u>. Live testimony will not be presented at the first date set for hearing, unless for good cause found by the court in advance of the hearing or otherwise so ordered. <u>The judge may order a further hearing at which oral evidence and exhibits will be received, or may, as appropriate, order that all evidence be presented by affidavit or declaration</u>.

LR 9014(a)(7) (emphasis added).

"An evidentiary hearing is appropriate if the bankruptcy court cannot readily determine from the record any disputed and material factual issues, but where the parties do not request an evidentiary hearing or the core facts are not disputed, the bankruptcy court is authorized to determine contested matters . . . on the pleadings and arguments of the parties, drawing necessary inferences from the record." <u>Tyner v. Nicholson (In re Nicholson)</u>, 435 B.R. 622, 636 (B.A.P. 9th Cir. 2010) (abrogated on other grounds by <u>In re Elliott</u>, 523 B.R. 188 (B.A.P. 9th Cir.

8

2014)). An evidentiary hearing is required if a contested motion cannot be decided without resolving a disputed material issue of fact. Fed. R. Bankr. P. 9014(d); Fed. R. Civ. P. 43(c); Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC), Nos. AZ-11-1142-DKiMY, 11-01124-JMM, 2011 WL 4502102, at *8 (B.A.P. 9th Cir. Aug. 26, 2011). "Motions . . . usually are decided on the papers rather than after oral testimony of witnesses." Id. at *6 (citing 9A Wright & Miller Fed. Practice & Proc. § 2416 (3d ed. 2011)).

However, "[n]othing in [Rule 9014(d)] prohibits a court from resolving any matter that is submitted on affidavits by agreement of the parties." Fed. R. Bankr. P. 9014, Advisory Committee Note to 2002 Amendment. Therefore, "[w]here the parties do not request an evidentiary hearing or the core facts are not disputed, the bankruptcy court is authorized to determine contested matters . . . on the pleadings and arguments of the parties, drawing necessary inferences from the record." Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz), 341 B.R. 371, 381 (B.A.P. 1st Cir. 2006).

A bankruptcy court's failure to hold an evidentiary hearing when one is required requires its decision to be vacated. See, e.g., In re Medpoint Mgmt, LLC, BAP No. AZ-15-1130-KuJaJu, 2016 WL 3251581 (B.A.P. 9th Cir. Jun. 3, 2016); Reliance Steel & Aluminum Co. v. Locklin (In re Locklin), BAP No. CC-14-1446-KuFKi, 2015 WL 8267995 (B.A.P. 9th Cir. Dec. 7, 2015); Yen v. Pedroche (In re Pedroche), BAP No. NC-13-1618-JuKuPa, 2014 WL 5840297 (B.A.P. 9th Cir. Nov. 10, 2014); Cregar v. Barclay (In re Cregar), BAP No. CC-10-1103-MkHKi, 2010 WL 6452905 (B.A.P. 9th Cir. No. 19, 2010).

In the case at hand, the Debtor demanded an evidentiary hearing in its Stay Relief Opposition, pp. 16-17, and thus the right to an evidentiary hearing was clearly raised and fully preserved, and there was no agreement between the parties to submit the matter without such a hearing. Moreover, the core facts regarding the nature and extent of adequate protection were developed and with substantial evidence in the form of the Stay Relief Opposition and the Silva Declaration, yet instead affording the Debtor due process through an evidentiary hearing, the Court summarily dismissed such evidence and without ever explaining why, and thus decided the

matter without considering the full extent of the evidence that could be presented in an evidentiary hearing. In short, by this Motion, the Debtor is simply trying to get the opportunity to present its evidence in full at an evidentiary hearing before the Court decides the issue of whether PMC is adequately protected. The Debtor acknowledges that the Court could still rule against it after conducting such an evidentiary hearing, but at least in that situation the Debtor would have had its day in Court and afforded sufficient due process on this most critical and case-ending issue.

3. **Summary Disregard of Evidence of Non-Debtor Value Without Explanation.**

The Court found that there was no evidence of Aircraft Hinge's value of its assets outside of the Silva Declaration, but never explained why it was or could simply disregard that evidence of value in non-debtor assets in determining whether PMC was adequately protected.

Relief from stay is intended to be determined under an expedited procedure, and hearings on the motion are thus handled in a summary fashion. Consequently, the issues are generally limited to the grounds for relief stated in § 362(d) of the Bankruptcy Code -- *i.e.*, lack of adequate protection or other "cause" for relief, the debtor's equity in the property and the necessity of the property to an effective reorganization. Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740 (9th Cir. 1985); Biggs v. Stovin (In re Luz Int'l, Ltd.), 219 B.R. 837, 841 (B.A.P. 9th 1998) (creditor's right to set off funds in cash collateral account under complex financial agreements not determinable in relief from stay proceeding); Harms v. Bank of N.Y. Mellon (In re Harms), 603 B.R. 19, 27 (B.A.P. 9th Cir. 2019) ("neither the movant's claim nor its security should be litigated in the relief from stay proceeding").

Affirmative defenses or counterclaims raised by the debtor against the creditor on unrelated issues are beyond the scope of a stay relief motion. "When the defendant debtor through complex and bona fide affirmative defenses or counterclaims seeks affirmative counter relief it is not proper to attempt to determine that issue in the [stay relief] hearing . . . Rather, the counterclaims or affirmative defenses may be severed out and the modification of stay tried on the assumption that the creditor will prevail on the counterclaim." Lehman Commercial Paper,

Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC), 423 B.R. 655, 664-665 (B.A.P. 9th Cir. 2009) (internal quotes omitted); see also In re Robbins 310 B.R. 626, 631 (B.A.P. 9th Cir. 2004).

On the other hand, courts should consider a debtor's affirmative defenses and counterclaims that directly involve the debtor's equity or other issues relevant to the motion. Bialac v. Harsh Inv. Corp. (In re Bialac), 694 F.2d 625, 627 (9th Cir. 1982). For example, a court determining a relief from stay motion should consider defenses that "strike at the very heart of the validity of movant's secured claim by barring any recovery on the debt or any lien enforcement." In re Souders, 75 B.R. 427, 432 (Bankr. E.D. Pa. 1987) (overruled on other grounds by FRG, Inc. v. Manley, 919 F.2d 850, 856 (3rd Cir. 1990)).

In the case at hand, as the Debtor asserted in its Stay Relief Opposition with citation to applicable authority, and relevant evidence in the Silva Declaration regarding the presence of non-debtor collateral owned by Aircraft Hinge, and which must be considered as well in the context of ruling on a secured creditor's stay relief motion. Even in what are intended to be limited, summary proceeding like a stay relief motion, the Court is not free simply to ignore or disregard relevant evidence without explanation like the Silva Declaration, which provided evidence of Aircraft Hinge's asset values also serving as collateral for the PMC loan. Moreover, if such evidence were properly considered, it showed that PMC was adequately protected if the Court were to consider that lender's entire collateral package, and not just the Debtor's property alone serving as collateral for the loan.

Disputed factual issues in contested matters like stay relief motions cannot be resolved through testimony in affidavits or declarations, but rather require testimony in open court. Fed. R. Bankr. P. 9014(d); In re Sheridan, No. 08-20381-TLM, 2009 WL 631355, at *5 (Bankr. D. Idaho Mar. 12, 2009). Additionally, although bankruptcy judges have broad discretion in their evidentiary rulings, they are not free to disregard evidence without explanation, especially a piece of evidence directly relevant to the core issue before the Court like the Silva Declaration and its testimony regarding the value of Aircraft Hinge's assets serving as additional collateral to

PMC's loan, and thus whether PMC's additional collateral securing the Loan provided adequate protection when considering its entire collateral package.

### 4. The Lack of Any Adequate Protection Stipulation or Order.

Finally, the Court's finding in its Oral Decision that there was no adequate protection stipulation or order suggests, incorrectly, that the Debtor had some affirmative duty to confirm that the adequate protection payments being made of $15,000 per month to PMC, combined with all of the other Debtor and non-debtor collateral included within PMC's collateral package, constituted adequate protection. Oral Decision, p. 12, ll. 15-21. That is contrary to applicable statute and practice, however, which places the impetus first on the creditor to seek stay relief if it asserts that it is not being adequately protected. See 11 U.S.C. § 362(d) ("On request of a party in interest and after notice and a hearing . . ."). Within the context of such a stay relief proceeding, and only once such a motion is filed by the creditor-movant, it is true that a debtor has the burden of proof on the issue of adequate protection pursuant to § 362(g)(2) of the Bankruptcy Code, but that is a different issue.

As such, the Court's finding in this regard was really premised on a misstatement of applicable law, as there is no such requirement in the Bankruptcy Code or the Bankruptcy Rules for a debtor to obtain such a determination in advance of a stay relief motion. Instead, it is only <u>after</u> a creditor or party in interest files a stay relief motion that the debtor must establish adequate protection, and within the context of such a stay relief proceeding (once commenced by a creditor), the Court can and indeed must consider a debtor's offer of adequate protection and whether that offer, combined with any other adequate protection being provided across the creditor-movant's entire collateral package, including any non-debtor sources.

### 5. No Explanation of Disregard of Lesser Alternatives.

An outright and immediate termination of the automatic stay is not the only potential remedy available pursuant to § 362(d) of the Bankruptcy Code, and the Court should have first considered the lesser alternatives of a modification or conditioning of the stay, which could have included an increased adequate protection payment greater than the $15,000 already being made,

and/or other lesser relief as was requested by the Debtor. Stay Relief Opposition, p. 12. The Court provided no explanation or justification for why the case-terminating remedy of an outright and immediate termination of the automatic stay was the only justified remedy in the case at hand, which ignores the statutory text itself, which requires the Court to consider such lesser alternatives or modifying or conditioning the stay, such as on making payments at a certain amount, before effectively "pulling the plug" on the entire case through a termination of the stay.

For example, in the case at hand, adequate protection payments were made since January 2025 at the rate of $15,000 a month to cover roughly the non-default interest accruing on PMC's alleged debt during the pendency of the case, and thus to mitigate any alleged post-petition diminution in value, which is exactly what adequate protection payments are intended to ameliorate. If that monthly payment amount was insufficient for some reason, then the Court could have explained why, and set an appropriate monthly adequate protection amount, as a lesser potential remedy, and conditioning the continuation of the stay on the Debtor's timely making such payments each month, and instead of simply taking the "all or nothing" approach that it did of immediately flipping to an outright and immediate termination of the stay, thus effectively ending the Debtor's reorganization effort.

## IV. CONCLUSION

WHEREFORE, the Debtor requests that the Court grant relief from its own prior Stay Relief Order, and thus vacate that decision without prejudice to deciding the matter after an appropriate evidentiary hearing, with such hearing consolidated with a confirmation hearing on the Debtor's Plan. The Debtor also requests such other and further relief as is just and proper.

Dated: May 19, 2025.

By: /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
MATTHEW C. ZIRZOW, ESQ., NBN 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor